UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Plaintiff,<br>v.<br><br>ALAN J. SMITH, et al.,<br><br>Defendants. | CASE NO. C14-0169JLR<br><br>ORDER GRANTING MOTION FOR EXTENSION OF TIME, DENYING MOTION FOR LEAVE TO USE COURT FACILITIES, DENYING MOTION FOR STAY, AND GRANTING MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Before the court are (1) Defendant Estate of Susann Smith's ("the Estate") motion for summary judgment seeking a judgment for, and a disbursement of, the life insurance benefits at issue in this interpleader action (MSJ (Dkt. # 48)); (2) *pro se* Defendant Alan Smith's motion to use court facilities to serve his response to the motion for summary judgment (MCF (Dkt. # 51)); (3) Mr. Smith's motion for an extension of time to file an amended response to the summary judgment motion (MFE (Dkt. # 55)); and (4) Mr.

ORDER - 1

Smith's motion to stay this action pending the outcome of his state court personal restraint petition and potential habeas proceedings (MTS (Dkt. # 56)). Mr. Smith opposes the Estate's motion for summary judgment (Smith MSJ Resp. (Dkt. # 50); Smith MSJ Am. Resp. (Dkt. # 57)), and the Estate opposes Mr. Smith's motion to stay (Estate MSJ Reply (Dkt. # 53) at 2 (addressing Mr. Smith's motion to stay)). The court has considered the parties' submissions in support of and in opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Mr. Smith's motion for an extension of time to file an amended response, DENIES as moot Mr. Smith's motion for leave to use the court's facilities, DENIES Mr. Smith's motion to stay, and GRANTS the Estate's motion for summary judgment.

## II. BACKGROUND

This is an interpleader action involving life insurance benefits. (*See* Compl. (Dkt. # 1).) The dispute concerns who is entitled to $150,000.00 in life insurance benefits following the death of Ms. Smith—either (1) Mr. Smith, Ms. Smith's former husband; (2) the Estate; or (3) the Department of Social and Health Services ("DSHS") as guardian for the two minor children of Mr. Smith and Ms. Smith. (*See id.*) The dispute arose because Mr. Smith was charged with murdering Ms. Smith, and under Washington law, so-called "slayers" are not permitted to benefit under the life insurance policies of their victims. (*See id.* ¶¶ 1-13); RCW 11.84.020, .100.

---

[1] The parties do not request oral argument on the motions (*see* MSJ at 1; MCF at 1; MFE at 1; MTS at 1; Smith MSJ Am. Resp. at 1), and the court concludes that oral argument would not be helpful to its disposition of these motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

The court previously stayed this case pending resolution of the criminal charges against Mr. Smith. (6/30/14 Order (Dkt. # 25) at 2-4.) On February 13, 2015, DSHS moved to lift the stay, informing the court that the charges against Mr. Smith had resulted in his conviction of first degree murder. (Mot. to Lift (Dkt. # 26) at 1-2.) After receiving no response from Mr. Smith or the Estate, the court granted DSHS's motion, lifted the stay, and entered a scheduling order. (3/6/15 Order (Dkt. # 27); 6/23/15 Sched. Order (Dkt. # 33).) The court set trial for October 24, 2016. (6/23/15 Sched. Order at 1.)

On May 23, 2016, Mr. Smith moved for another stay, styled as a motion for continuance, pending the result of his appeal of his criminal conviction. (*See* Mot. for Continuance (Dkt. # 36) at 1-2.) Neither DSHS nor the Estate opposed that motion. (*See* DSHS Mot. for Continuance Resp. (Dkt. # 38); Estate Mot. for Continuance Resp. (Dkt. # 39).) The court granted Mr. Smith's motion and stayed these proceedings "until Mr. Smith's appeal from his criminal conviction has been resolved." (7/1/16 Order (Dkt. # 40) at 3.) The court ordered the parties to notify the court when the appeal was "sufficiently resolved." (*Id.*)

On January 17, 2018, the parties informed the court that the United States Supreme Court denied Mr. Smith's petition for a writ of certiorari, which meant that "[t]he criminal case in which Mr. Alan Smith was convicted of murdering his wife Susann Smith is fully resolved." (1/17/18 JSR (Dkt. # 44).) Accordingly, the court lifted the stay and entered a new trial schedule. (1/23/18 Order (Dkt. # 45); 1/23/18 Sched. Order (Dkt. # 46).)

//

On August 13, 2018, the Estate filed the present motion for summary judgment, seeking a judgment for, and a disbursement of, the life insurance benefits at issue in this case. (*See generally* MSJ.) The Estate noted its motion for September 21, 2018. (*Id.* at 1.) The Estate argues that, based on Mr. Smith's criminal conviction for murdering Ms. Smith, he is precluded from receiving the insurance benefits under Washington's anti-slayer law. (*Id.* at 6-7 (citing chapter 11.84 RCW).) The Estate further claims that the insurance proceeds should be disbursed to the Estate for ultimate distribution to the two minor children of Mr. Smith and Ms. Smith. (*Id.* at 7-8.) DSHS filed a response in support of the Estate's motion. (*See* DSHS MSJ Resp. (Dkt. # 52) at 1-2.) Mr. Smith opposes the motion, based in part on his pending personal restraint petition that contests his criminal conviction. (Smith MSJ Am. Resp. at 1-10.)

In addition to the Estate's pending summary judgment motion, Mr. Smith filed a number of motions with the court. First, on September 10, 2018, Mr. Smith filed a motion pursuant to Federal Rule of Civil Procedure 5(b)(3) to use court facilities to serve his original response to the summary judgment motion. (*See* MCF.) Second, on September 17, 2018, Mr. Smith filed a motion for an extension of time to file an amended response. (*See* MFE; *see also* Smith MSJ Am. Resp.) Lastly, on September 25, 2018, Mr. Smith filed a motion to stay this action pending the outcome of his personal restraint petition and potential habeas proceedings. (*See* MTS.)

The court first addresses Mr. Smith's motions and then addresses the Estate's motion for summary judgment.

//

ORDER - 4

## III. ANALYSIS

### A. Motion to Use Court Facilities and Motion for Extension of Time

On September 10, 2018, Mr. Smith filed a motion to use court facilities to serve his original response to the summary judgment motion on the Estate and DSHS. (*See* MCF at 1-2.) Mr. Smith appears to have filed this motion under the belief that his response was due on September 10, 2018. (*See id.* (Mr. Smith explaining that, on September 4, he was "very pressed to complete [the] response" and was unable "to make copies to serve opponents" before the end of the day).) The Estate, however, noted its summary judgment motion for September 21, 2018 (MSJ at 1), which means that Mr. Smith's response was not due until September 17, 2018, *see* Local Rules W.D. Wash. LCR 7(d)(3) ("Any opposition papers shall be filed and served not later than the Monday before the noting date.").

Before the court ruled on Mr. Smith's motion to use court facilities, on September 17, 2018, Mr. Smith filed a motion for an extension of time to file an amended response. (*See* MFE; *see also* Smith MSJ Am. Resp.; Dkt.) Mr. Smith requested the extension because "[d]ue to limited access to the law library . . . , [he] was unable to incorporate all intended materials in his initial response." (MFE at 1.) Under Federal Rule of Civil Procedure 6(b)(1), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A). "Good cause" in this context "is a non-rigorous standard." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). In determining

whether good cause exists, the court considers the reason needed for the extension, any bad faith on behalf of the moving party, and any prejudice to the nonmoving parties. *See id.* at 1259-60. Here, Mr. Smith states that his limited access to the law library impeded his ability to timely file an acceptable response. The court does not find that Mr. Smith acted in bad faith by requesting what amounted to an eight-day extension. (*See* Smith MSJ Am. Resp. (filed on September 25, 2018).) Moreover, neither the Estate nor DSHS will suffer prejudice as the result of an extension, as evidenced by the fact that neither party opposes the motion. (*See generally* Dkt.) Finally, Mr. Smith's motion was timely in that it was filed on September 17, 2018, which was the date his response to the Estate's motion for summary judgment was due. *See* Fed. R. Civ. P. 6(b)(1)(A). Therefore, the court GRANTS Mr. Smith's motion for an extension of time to file an amended response. (*See* MFE.)

The court's granting of this motion, in addition to Mr. Smith's filing of an amended response (*see* Smith MSJ Am. Resp.), moots Mr. Smith's motion to use court facilities to serve his original response because the original response is no longer operative. Rather, Mr. Smith's amended response is his operative response to the Estate's summary judgment motion. Moreover, Mr. Smith did not renew the motion to use court facilities to serve his amended response. (*See generally* Dkt.) Therefore, the court DENIES as moot Mr. Smith's motion to use court facilities to serve his original response. (*See* MCF.)

//

//

ORDER - 6

**B.     Motion to Stay**

On September 25, 2018, Mr. Smith filed a motion to stay this action pending the outcome of his state court personal restraint petition and potential habeas proceedings. (*See* MTS.) Mr. Smith bases his motion to stay on the arguments he raised in his amended summary judgment response. (*See id.* at 1 ("For the reasons presented in the enclosed, Amended Response to Motion of 9 August for Summary Judgment . . . ."); *see generally* Smith MSJ Am. Resp.) Mr. Smith's amended response attacks his underlying criminal conviction on numerous grounds, including that his alleged confession was improperly obtained and that exculpatory DNA evidence was improperly discounted. (*See* Smith MSJ Am. Resp. at 6-9.) Applicable to the motion to stay, Mr. Smith argues that, because no court has ruled on the merits of the constitutional claims that he raised in his personal restraint petition, his criminal conviction for murder in the first degree cannot be considered "irrevocably upheld." (*Id.* at 7.) Moreover, according to Mr. Smith, when DSHS did not oppose his petition for a writ of certiorari in the United States Supreme Court, DSHS "conceded that the predicate conviction violates the Fourteenth Amendment, having been found upon insufficient evidence, and is thus illegal." (*Id.*) Mr. Smith further alleges that, even if his personal restraint petition is not successful, he still can pursue habeas relief. (*See id.*) For all of these reasons, Mr. Smith requests that the court stay this action until his state court personal restraint petition and potential habeas proceedings are resolved. (*See* MTS at 1.)

Personal restraint petitions provide an avenue for a petitioner to collaterally attack his conviction. *See* RAP 16.3-16.15; *see also Matter of Cook*, 792 P.2d 506, 509-12

(Wash. 1990). To obtain relief from personal restraint, a petitioner must establish that his restraint is unlawful under one of seven enumerated grounds. *See* RAP 16.4(c); *see also Matter of Cook*, 792 P.2d at 510. Mr. Smith's personal restraint petition is not before this court, but Mr. Smith argues that it is relevant to this action because his status as a slayer—and therefore his entitlement to insurance benefits—depends on the outcome of his personal restraint petition. (*See generally* MTS; Smith MSJ Am. Resp.)

"Under Washington law, any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful killing of another individual is deemed a slayer who cannot collect life insurance proceeds on the decedent." *Primerica Life Ins. Co. v. Grim*, No. C09-0108RAJ, 2009 WL 3297481, at *4 (W.D. Wash. Oct. 13, 2009) (citing RCW 11.84.010(5), .020, .100(1)). Insurance proceeds that are otherwise payable to the slayer as the beneficiary of a decedent's life insurance policy are paid instead to the decedent's estate, unless the policy designates some other person as the beneficiary. RCW 11.84.100(1). "A final judgment of conviction for the willful and unlawful killing of the decedent is conclusive for purposes of determining whether a person is a slayer under this section." RCW 11.84.140(1). Washington's anti-slayer laws are "construed broadly to effect the policy of this state that no person shall be allowed to profit by his or her own wrong, wherever committed." RCW 11.84.900.

Mr. Smith argues that, because he has a pending personal restraint petition and potential habeas proceedings, and because DSHS did not oppose his petition for a writ of certiorari, his underlying conviction for murder in the first degree cannot be considered "irrevocably upheld." (*See* Smith MSJ Am. Resp. at 7.) As applicable to this
ORDER - 8

interpleader action, the court understands Mr. Smith's claim to be that this lack of finality precludes a finding that he is a "slayer" who cannot collect the $150,000.00 in life insurance benefits. Mr. Smith is incorrect.

On February 4, 2015, Mr. Smith was convicted of first degree murder in Snohomish County Superior Court. (*See* Mot. to Lift at 2; *see also* MSJ, Ex. A at 19.) This conviction was upheld by both the Washington Court of Appeals and the Washington Supreme Court. (*See generally* MSJ, Ex A.) Although Mr. Smith collaterally attacks that conviction, his efforts do not negate the fact that there now exists "[a] final judgment of conviction for the willful and unlawful killing of the decedent." RCW 11.84.140(1); *see also In re Quinn*, 226 P.3d 208, 217 (Wash. Ct. App. 2010) (a personal restraint petition can only be filed "within one year after the petitioner's conviction becomes *final*.") (emphasis added). The final conviction from the state courts is "conclusive for purposes of determining whether a person is a slayer under [the anti-slayer statutes]." RCW 11.84.140(1).

In fact, other courts have held that a trial court conviction qualifies a person as a slayer even while the conviction is on its original appeal. *See, e.g., Columbus Life Ins. Co. v. Allen*, Case No. 3:13-cv-1612-J-39JBT, 2015 WL 12838836, at *2 (M.D. Fla. Aug. 11, 2015). For example, the court in *Allen* applied Washington's anti-slayer statutes after a person was convicted of first degree murder in the trial court, but while his original appeal was pending in the Washington Supreme Court. *Id.* at *2 n.4. The court held that the trial court conviction was sufficient to find that the person was a slayer who was not entitled to insurance benefits. *Id.*

Unlike the defendant in *Allen*, Mr. Smith has exhausted his initial appeals process, each stage of which confirmed his criminal conviction. (*See generally* MSJ, Ex. A.) Mr. Smith has now moved on to his collateral attacks. Notwithstanding his collateral attacks, the conviction in the Snohomish County Superior Court provided "[a] final judgment of conviction for the willful and unlawful killing of the decedent," which "is conclusive for purposes of determining whether a person is a slayer under this section." RCW 11.84.140(1); *see also Primerica*, 2009 WL 3297481, at *2, *4 (relying on the superior court conviction to hold that the defendant was a slayer who cannot collect insurance proceeds, even though the defendant still had time to collaterally attack the underlying conviction).

Mr. Smith is incorrect that the court must wait until a slayer pursues every potential avenue of post-conviction relief before disbursing insurance proceeds. (*See* Smith MSJ Am. Resp. at 6-9.) Mr. Smith's contention could indefinitely delay any disbursement, as there is always the potential that new evidence could emerge. *See* 28 U.S.C. § 2244(d)(1)(D) (explaining that a writ of habeas corpus can be filed within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"). Mr. Smith's proposal would keep insurance proceeds forever in abeyance, effectively nullifying the anti-slayer statutes' direction to disburse proceeds to the decedent's estate. *See* RCW 11.84.100(1). The court declines Mr. Smith's invitation to read this contradiction into the law.

Moreover, although a "final judgment of conviction" is "conclusive," *see* RCW 11.84.140(1), the court does not need a criminal conviction before it can determine

ORDER - 10

whether Mr. Smith is a slayer for purposes of the anti-slayer statutes. "A criminal conviction is not a Sine qua non to application of the Slayer's Act." *Leavy, Taber, Schultz & Bergdahl v. Metro. Life Ins. Co.*, 581 P.2d 167, 169 (Wash. Ct. App. 1978) (citing *Young v. Seattle*, 172 P.2d 222 (Wash. 1946)). That is because, unlike the heightened standard of proof in a criminal case, an anti-slayer action is a civil case judged by a preponderance of the evidence. *Leavy*, 581 P.2d at 169. As a result, "[c]onceivably a person may be acquitted because guilt had not been proven beyond a reasonable doubt, or conceivably a person may not even be tried and could still be shown in a civil action to have been a willful slayer." *Id.* In other words, notwithstanding the finality of the Mr. Smith's criminal conviction, the court could, in theory, choose to rely on the record from Mr. Smith's criminal trial to find that, by a preponderance of the evidence, he is a slayer and not entitled to Ms. Smith's life insurance benefits. *See* RCW 11.84.130 ("Any record of conviction for having participated in the willful and unlawful killing of the decedent . . . shall be admissible in evidence against a claimant of property in any civil proceeding arising under this chapter.").

But the court need not independently determine whether the state court's record proves by a preponderance of the evidence that Mr. Smith is a slayer. Mr. Smith's criminal conviction is conclusive evidence of his status. *See* RCW 11.84.140(1). And the court does not need to wait on Mr. Smith's indefinite collateral attacks to reach this conclusion. Therefore, the court DENIES Mr. Smith's motion to stay this matter pending his personal restraint petition and potential habeas proceedings.

//

## C. Motion for Summary Judgment

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and citation omitted). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue

for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Accordingly, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

The material facts of this case are not in dispute. On February 12, 2013, Ms. Smith was murdered. (*See generally* MSJ, Ex. A.) At the time of her death, she was married to Mr. Smith. (Compl. at 2.) Also at the time of her death, Mr. Smith was employed by The Boeing Company. (*Id.* at 3; MSJ at 2.) As a benefit of his employment, Mr. Smith and Ms. Smith were covered by a group life insurance policy issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). (MSJ at 2.) On April 17, 2013, Mr. Smith made a formal claim to National Union for the $150,000.00 in insurance benefits that were available as a result of Ms. Smith's death. (Compl. at 3.) On February 4, 2015, Mr. Smith was charged, convicted, and sentenced to 344 months in prison for the murder of Ms. Smith. (*See* MSJ, Ex. A at 19.) This conviction was upheld by both the Washington Court of Appeals and the Washington Supreme Court. (*See generally id.*)

Consequently, Mr. Smith is a slayer under Washington law and cannot collect the proceeds of Ms. Smith's life insurance policy as the policy's beneficiary. RCW 11.84.100(1); *see supra* § III.B. Further, because there is no secondary beneficiary listed on Ms. Smith's life insurance policy (*see* Compl. at 4), the proceeds of the policy must be paid to the Estate, *see* RCW 11.84.100(1). The court therefore GRANTS the Estate's motion for summary judgment and ORDERS that the life insurance benefits that have

been deposited in the court's registry be disbursed to the Estate for ultimate distribution to the trusts established for the two minor children of Mr. Smith and Ms. Smith.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Smith's motion for an extension of time to file an amended response (Dkt. # 55), DENIES as moot Mr. Smith's motion for leave to use the court's facilities (Dkt. # 51), DENIES Mr. Smith's motion to stay (Dkt. # 56), and GRANTS the Estate's motion for summary judgment (Dkt. # 48). The court also ORDERS that the life insurance benefits that have been deposited in the court's registry be disbursed to the Estate for ultimate distribution to the trusts established for the two minor children of Mr. Smith and Ms. Smith.

Dated this 4th day of December, 2018.

JAMES L. ROBART
United States District Judge